**Constructora Andrade GUTIERREZ, S.A., Plaintiff,**

v.

**AMERICAN INTERNATIONAL INSURANCE COMPANY OF P.R., Defendant.**

**Civil No. 99–1811(JAG).**

United States District Court, D. Puerto Rico.

Feb. 25, 2003.

84

Francisco A. Rosa–Silva, Rosa Silva, Rosa Domenech & Hernandez Lopez de Victoria, PSC, Ivan R. Fernandez–Vallejo, Rodriguez & Fernandez, San Juan, PR, for Defendant.

Thomas E. Abernathy, IV, William L. Baggett, Smith, Currie & Hancock, LLP, Atlanta, GA, for Movant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Presently before the Court is plaintiff Constructora Andrade Gutiérrez's (hereinafter "CAG") motion for summary judgment (Docket No. 39.) Third-party defendant C & M Constructora (hereinafter "C & M"), and defendant American International Insurance Company of Puerto Rico (hereinafter "AIICO") duly opposed the motion for summary judgment. (Dockets No. 59 and 62.) Thereafter, CAG filed a reply in support of its position on April 16, 2001. (Docket No. 68.)

CAG filed a complaint against AIICO on July 19, 1999,[1] seeking to recover monies allegedly owed to CAG under a guarantee issued by AIICO on May 6, 1996. CAG asserts that the language in AIICO's guarantee clearly states that it is unconditional, thus being more akin to a letter of credit. On the other hand, AIICO and C & M contend that the instrument was not intended to be an independent obligation to CAG, and that it was conditioned upon C & M's failure to comply with the stipulation of a joint venture agreement between CAG and C & M. After a careful review of the record, the Court finds that AIICO's guarantee was indeed unconditional, thus warranting summary disposition in favor of CAG.

Jaime Brugueras–Cernuda, Munoz, Boneta, Gonzalez, Arbona, Benitez & Peral, San Juan, PR, for Plaintiff.

---

1. An amended complaint was filed on November 8, 2000. (Docket No. 44.)

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure, sets forth the standard for ruling on summary judgment motions: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The critical question is whether a genuine issue of material fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. *Morris v. Government Dev. Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994); *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of the suit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir. 1995); *Maldonado Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). On a motion for summary judgment, the court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. v. Canadian Pac. Ltd.,* 133 F.3d 103, 106 (1st Cir.1997). Nonetheless, the court is free to "ignore 'conclusory allegations, improbable inferences and unsupported speculation.'" *Suarez v. Pueblo International, Inc.,* 229 F.3d 49, 53 (1st Cir. 2000) (citing *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990)).

## DISCUSSION

In November 1995, CAG [2] and C & M, a construction company headquartered in the Dominican Republic, entered into a joint venture agreement regarding the reconstruction of the Pont Sondé–Mirebalais Highway, a highway in the Republic of Haiti. (Docket No. 59, Tab 1.) On May 6, 1996, the CAG–C & M joint venture executed a contract with the Republic of Haiti for the construction of the aforementioned project. That same day, and pursuant to the joint venture agreement, C & M procured two independent guarantees for the benefit of CAG. The only instrument [3] at issue in this case is the one issued by defendant AIICO, at the request of C & M, in favor of CAG entitled " 'Garantía de Ejecución'—Performance Bond 160–17167" in the amount of $5,696,322.42. (Docket No. 39, Exhibit 2 and 2A, the Spanish Guarantee and a certified English translation.[4]) It is undisputed that this document was executed and signed in San Juan, Puerto Rico.

"Under Puerto Rico law, an agreement is 'clear' when it 'can be understood in one sense alone, without leaving any room for doubt, controversies or dif-

---

**2.** CAG is headquartered in Brazil.

**3.** Other instruments were issued in the course of the joint venture agreement between CAG and C & M due to the nature of the project. (*See, e.g.,* Docket No. 59, Tab 4, CAG provided performance and payment bonds on behalf of the CAG–C & M Joint Venture to the Republic of Haiti.) There is also a letter agreement dated September 6, 1996 between AIICO and C & M. (Docket No. 39, Exhibit 4.)

**4.** C & M disputes that Exhibit 2A is a true and correct certified translation of Performance Bond 160–17167. (*See* Docket No. 45). C & M argues that a phrase contained in the original Spanish version should have been translated "as a bond" instead of "as a guarantee." The Court, however, denied the motion to strike CAG's translation. (Docket No. 80). Nevertheless, the slight difference in the translation does not change the Court's analysis and the finding that the instrument's language is clearly unconditional.

ference of interpretation....'" *Executive Leasing Corp. v. Banco Popular de Puerto Rico*, 48 F.3d 66, 69 (1st Cir.1995) (citations omitted); *Hopgood v. Merrill Lynch, Pierce, Fenner & Smith*, 839 F.Supp. 98, 104 (D.P.R.1993); *see also* Article 1233 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, § 3471; *Unisys Puerto Rico, Inc. v. Ramallo Brothers Printing, Inc.*, No. CE–89–754 at 6 (P.R.1991)(slip op.)("[w]hen the terms of a contract, its conditions and exclusions, are clear and specific, and leave no room for ambiguity or for diverse interpretations, they should be thus applied"). Puerto Rico law dictates that in order "to consider ... extrinsic evidence ..., a court must first find the relevant terms of the agreement unclear." *Executive Leasing Corp.*, 48 F.3d at 69; *see also Mercado–Garcia v. Ponce Federal Bank*, 979 F.2d 890, 894 (1st Cir.1992)(court did not consider extrinsic evidence and looked no further than the note itself when its provisions were clear and unambiguous.)

█ The instrument at issue here, which was originally executed and printed in Spanish, contains as part of its title[5] the wording "performance bond." Nevertheless, the wording of the agreement as exemplified by the first paragraph is akin to that of an independent letter of credit rather than that of a guaranty, a surety or a performance bond dependent upon the original agreement.[6] *See, e.g., International Paper Co. v. April Agro Industries*, 747 F.Supp. 111, 114–117 (D.P.R.1990)(dis-

cussing guaranties and sureties under Puerto Rico law).

█ The first paragraph of the instrument issued by AIICO states: "We the undersigned, American International Insurance Company of Puerto Rico, hereby establish in the name and for the account of C.M. Constructora, S.A., an irrevocable and unconditional guarantee in the amount of FIVE MILLION SIX HUNDRED NINETY–SIX THOUSAND THREE HUNDRED TWENTY–TWO and 42/100 United States dollars (US$ 5,696,322.42), as a guarantee for the completion by the contractor of its obligations to Constructora Andrade Gutiérrez S.A.(which shall hereinafter be called the "Owner of the Works") pursuant to the stipulations of the contract dated May 6, 1996." The words "irrevocable and unconditional" clearly conform with the typical language of a letter of credit designed to serve as a guarantee to the beneficiary against harm caused by a contractual default, and completely independent of any other contractual obligation. *See Ground Air Transfer, Inc. v. Westates Airlines, Inc.*, 899 F.2d 1269, 1272 (1st Cir.1990)(discussing the ordinary principles of letters of credit under the UCC). "Letters of Credit" are recognized under Puerto Rico law,[7] which is somewhat analogous to the UCC. *See, e.g., Revlon Realistic, Inc. v. Las Americas Trust Co.*, 135 D.P.R. 363 (1994)(letters of credit connect the issuer and the beneficiary with total independence from the underlying contract between the customer and

---

5. The way an instrument is labeled and/or entitled does not given an instrument its legal effect. *See e.g., Egyptian American Bank v. United States*, 13 Cl.Ct. 337, 341–344 (1987), *aff'd*, 861 F.2d 728 (Fed.Cir.1998).

6. The Court includes the terms guaranty, surety and performance bond given that in some of the case law the terms are referred to interchangeably.

7. It should be noted that the Puerto Rico law pertaining to "letters of credit" was recently repealed. The law in effect when the instrument at issue was executed (in May 1996) was the same discussed in the *Revlon* case cited above, 7 L.P.R.A. § 1601 *et seq.* (1983). This section was repealed on September 19, 1996, and the new law came into effect 120 days thereafter. The current law dealing with "letters of credit" is codified at 19 L.P.R.A. § 1221 *et seq.*

the beneficiary.) The plain language of the document (Docket No. 39, Exhibit 2A) leads the Court to conclude that the instrument issued by AIICO in favor of CAG was an unconditional letter of credit. The Court need not consider the extrinsic evidence submitted by the parties given that the language of the instrument is clear and unambiguous.

■ Under the terms of the letter of credit, the only conditions for payment are contained in paragraph two of the same. They are: (1) that CAG provide AIICO with "written notification ... prior to the expiration date" of May 6, 1999, and (2) that such written notification "contain[ ] the amount to be paid" and "stat[e] that the contractor [C & M] ha[d] not performed its contractual obligations." (Docket No. 39, Exhibit 2A, ¶ 2.) The record supports CAG's contention that it provided AIICO with the required demand and notification. On March 25, 1999, CAG, by and through counsel, delivered written notification to AIICO stating that C & M failed to perform its obligations under the joint venture agreement and demanding payment of $1,407,000 under the AIICO Guarantee. (Docket No. 39, Exhibit 7.) AIICO has refused to pay the amount demanded by CAG under the AIICO letter of credit.

All the parties to this dispute have submitted evidence and discussed amply the modifications that were made to the joint venture agreement on February 11, 1998. (*See* Docket No. 39, Exhibits 5 and 6; Docket No. 59, Tabs 8 and 9.) In essence, the February 1998 modifications altered C & M's and CAG's participation in the joint venture agreement.[8] The Court, however, finds that the modifications to the joint

venture agreement are irrelevant to the present inquiry since the AIICO guarantee expressly provided that modifications to the joint venture agreement or the work to be done within its framework would have no effect on AIICO's obligations thereunder. (*See* Docket 39, Exhibit 2A, ¶ 3).

### *CONCLUSION*

The Court concludes that there is no genuine issue of material fact with regard to the instrument issued by AIICO. Because AIICO has the obligation to pay a secured debt without inspecting the terms of the agreement between CAG and C & M (the joint venture agreement), the Court hereby **GRANTS** CAG's Motion for Summary Judgment (**Docket No. 39**) and finds AIICO liable in the amount of $1,407,000.00. Judgment will be entered accordingly.

IT IS SO ORDERED.

---

8. The only relevance of the February 1998 modification is that it was through that particular modification that C & M agreed to pay CAG $1,407,000. A payment schedule was established to satisfy C & M's obligation, the

first payment of which was due on June 15, 1998. When C & M made no payments to CAG in accordance with the February 11, 1998 modification, CAG attempted to collect the monies from the AIICO's letter of credit.