Antonio YORDAN, et al., Plaintiffs

v.

BURLEIGH POINT, LTD., Defendant.

Civil No. 06–1286 (FAB).

United States District Court,
D. Puerto Rico.

May 2, 2007.

Enrique Peral–Soler, Roberto Boneta, Munoz, Boneta, Benitez, Peral & Brugueras, Eugenio C. Romero, Eugenio C. Romero Law Office, San Juan, PR, for Plaintiffs.

Francisco J. Colon–Pagan, Francisco E. Colon–Ramirez, Colon & Martinez, San Juan, PR, Monica I. De–Jesus–Santana, Salvador Antonetti–Zequeira, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

On January 9, 2007, plaintiffs Antonio Yordan, his wife Elsie Nones de Yordan, and the conjugal partnership constituted between them (collectively "plaintiffs"), filed an amended complaint against defendants Burleigh Point, LTD. d/b/a "Billabong" ("BPL" or "Billabong"); alleging, in pertinent part, unjust termination of a Sales Representative Agreement under the Sales Representative Act, Law No. 21 of December 5, 1990, P.R. Laws Ann. tit. 10 § 279–279h ("Law 21").[1] (Docket No. 49). On July 21, 2006, BPL moved the Court to dismiss the Law 21 claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) (Docket No. 16). On August 10, 2006, plaintiffs opposed the motion to dismiss (Docket Nos. 23 & 27). For the reasons discussed below, the Court **DENIES** BPL's motion to dismiss.[2]

## FACTUAL BACKGROUND

On June 14, 2002, BPL, a California corporation, and Mr. Yordan executed a "Sales Representative Agreement" ("the Agreement"), effective June 1, 2002. (Docket No. 49, ¶ 7) Both plaintiffs, Mr. Yordan and Mrs. Nones de Yordan, are bound by the terms of the Agreement. (Docket Nos. 1 and 49)

---

1. The original complaint was filed on March 17, 2006. (Docket No. 1).

2. One of plaintiffs' contention is that BPL's Motion to Dismiss should be treated as a Motion for Summary Judgment because BPL incorporated the Sales Representative Agreement in its Motion. That request is simply without merit. It is clear that the court may consider materials that are integral to the plaintiff's complaint or materials subject to judicial notice while ruling on a motion to dismiss, without having to treat the motion as one for summary judgment. *See Estate of*

By the Agreement, BPL designated Mr. Yordan as a representative "on a nonexclusive basis". (Docket No. 16, Exh. 1, ¶ 1) Specifically, section 1 of the Sales Agreement provides that Mr. Yordan was appointed by BPL as a representative "on a non exclusive basis to promote and disseminate information and solicit orders from approved accounts in the geographic area located in the United States and identified as follows: *Puerto Rico, Virgin Islands, Dominican Republic, Barbados, West Indies* (the "Territory")[.]" (emphasis in the original).

Article 2 of the Agreement states that the agreement will "remain in effect unless otherwise renegotiated or terminated as provided herein (the "Term")." As to termination, the Agreement provides the following:

"5. *Termination*: A party or the Parties may terminate this agreement as follows: ...

5.1. By either party, for any reason without cause and without regard to reasonableness upon written notice pursuant to Section 8, which shall be effective ten (10) days after either Party is deemed to have been given such notice (the "Effective Date of Termination".

\*　　\*　　\*

5.6. **Immediately upon the giving of notice of termination** by either Party, BPL shall have the absolute right to

---

*Axelrod v. Flannery,* 476 F.Supp.2d 188, 199–200. (D.Conn.2007); *Rodi v. Southern New England School of Law,* 389 F.3d 5, 12 (1st Cir.2004) ("In ruling on whether a plaintiff has stated an actionable claim, an inquiring court, be it a trial or appellate court, must consider the complaint, documents annexed to it, and other materials fairly incorporated within it.")(internal citations omitted) This sometimes includes documents referred to in the complaint but not annexed to it. *Coyne v. Cronin,* 386 F.3d 280, 285–86 (1st Cir.2004)

appoint other representatives to solicit orders for the Products in the Territory, without any obligation to Representative other than to pay the Commissions to the Representative in accordance with Section 4, above." (Emphasis added)(Docket No. 16, Exh. 1)

The Agreement also provides that it "supersedes any and all other agreements either oral or in writing between the parties hereto with respect to the relationship between BPL and the Representative and no other agreement statement or promise relating to the subject matter of this Agreement which is not contained herein, shall be valid or binding." (Docket No. 16, Exh. 1, ¶ 11)

On February 13, 2006, BPL terminated plaintiffs' sales representative agreement for Puerto Rico. (Docket No. 49, ¶ 17; Docket No. 57, ¶ 18).

## DISCUSSION

### A. *Motion to Dismiss Under Fed. R.Civ.P 12(b)(6)*

Pursuant to Rule 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Brown v. Hot, Sexy, and Safer Prods., Inc.,* 68 F.3d 525, 530 (1st Cir.1995); *Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit,

however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (*citing Correa–Martinez,* 903 F.2d at 52). That is, for a plaintiff to survive a motion to dismiss he must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988). Therefore, a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations". *Sanchez v. Public Building Authority,* 402 F.Supp.2d 393, 397–398 (internal citations omitted).

### B. *BPL's Motion to Dismiss*

■ Defendants contend that plaintiffs' Law 21 claims should be dismissed with prejudice. They argue that the provisions of the Law 21 are inapplicable to the Agreement executed by the parties and that such agreement was terminable at will because it is nonexclusive.

Law 21 prohibits a principal from terminating its agreement with an **exclusive** sales representative without just cause. P.R.Laws Ann. tit. 10, § 278.[3] Resem-

---

**3.** Law 21 "is an offspring of the Dealer's Contract Law", also known was Law 75. After the Puerto Rico Supreme Court held in *Roberco, Inc. & Roberto Colon v. Oxford Indus., Inc.,* 122 D.P.R. 115 (1988) that Law 75 does not protect sales representatives, the

Puerto Rico legislature enacted Law 21 to protect sales representatives who fell short in compliance with dealership status under Law 75. *Innovation Marketing, et al. v. Tuffcare Inc.* 31 F.Supp.2d 218, n. 1; *see also Tavarez v. Champion Products, Inc.,* 903 F.Supp. 268,

bling the Dealer's Contract Law, also known as Law 75, Law 21 protects Puerto Rico sales representatives from arbitrary terminations after they create a market for their principals.

Law 21 defines a sales representative as "an independent entrepreneur who establishes a sales representation contract **of an exclusive nature,** with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico." P.R.Laws Ann. tit. 10, § 279(a). Consequently, an essential element of a Law 21 claim is the existence of an "exclusive sales representation contract" entered into after December 5, 1990. P.R.Laws Ann. tit. 10, § 279.

The law fails to define when a sales representative relationship is considered "exclusive," and local courts have yet to interpret its meaning. When interpreting contracts pursuant to Law 75, however, courts have noted that exclusivity is generally apparent either from the contract itself or from the arrangements agreed upon between the parties. *Innovation Marketing,* 31 F.Supp.2d at 221; *see also Ballester Hermanos, Inc. v. Campbell Soup, Co.,* 797 F.Supp. 103, 105 (D.P.R. 1992); *R.W. Intern. Corp. v. Welch Food, Inc.,* 13 F.3d 478 (1st Cir.1994).

The First Circuit Court of Appeals has held, however, that "[a]lthough 'non-exclusive distributors are entitled to protection under Law 75,' [i]t is equally true ... that Law 75 does not operate to convert nonexclusive distribution contracts into exclusive distribution contracts." *Borschow Hospital and Medical Supplies, Inc. v. Cesar Castillo,* 96 F.3d 10, 14 (1st Cir. 1996) (*citing General Office Products v. Gussco Manufacturing, Inc.,* 666 F.Supp. 328, 331 and *Vulcan Tools of Puerto Rico*

*v. Makita U.S.A., Inc.,* 23 F.3d 564, 569 (1st Cir.1994)).

Consequently, under Law 75 "the 'established relationship' between dealer and principal is bounded by the distribution agreement, and therefore the Act only protects against detriments to contractually acquired rights." *Id., citing Vulcan Tools,* 23 F.3d at 569. In this case, BPL argues that the sales agreement at issue is clear and unambiguous and that because "the first paragraph of the Agreement expressly and clearly states that BPL appoints Plaintiffs 'on a **nonexclusive** basis'", Law 21 is inapposite and does not protect plaintiff (emphasis in the original) (Docket No. 16, p. 8)

█ It is well-settled law that when a contract is unambiguous, its literal meaning must be applied. P.R. Laws Ann. tit. 31 § 3471 "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." *Borschow,* 96 F.3d at 14; P.R.Laws Ann. tit. 31, § 3471. "Under Puerto Rican law, an agreement is 'clear' when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation....' " *Innovation,* 31 F.Supp.2d at 221 (*citing Executive Leasing Corp. v. Banco Popular de Puerto Rico,* 48 F.3d 66, 69 (1st Cir.1995)); *see also Heirs of Ramirez v. Superior Court,* 81 P.R.R. 347, 351 (1959). Therefore, in a contract subject to Law 75, where a term providing for "non-exclusive" distributorship is clear and unambiguous, there is no need to consider extrinsic evidence of promise to limit number of distributors even absent a contractual integration clause. *Id.; Vulcan Tools,* 23 F.3d

271 (D.P.R.1995) Because Law 21 is modeled after the Dealer's Contract Law, it is well settled that applicable jurisprudence to Law

75 is also of application in controversies which fall under Law 21. *Innovation Marketing,* 31 F.Supp.2d at 220.

at 564–68. Here, however, plaintiffs highlight an article in the Agreement which appears to contradict the non-exclusivity clause and, because of the ambiguity caused by that contradiction, point to extrinsic evidence that they claim supports their argument that plaintiffs are exclusive sales representatives.

▆▆▆▆ When interpreting a contract under Puerto Rico law, its stipulations "should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together." P.R. Laws Ann. tit. 31 § 3475 When a contract is ambiguous, extrinsic evidence may be considered to determine the intention of the parties. *See Innovation,* 31 F.Supp.2d at 222–223 and *Executive Leasing Corp.,* 48 F.3d at 69 ("[T]o consider extrinsic evidence at all, the court must first find the relevant terms of the agreement unclear.")

▆▆▆▆ It is undisputed that the Sales Representative Agreement indicates in paragraph 1 that "BPL ... appoints the Representative [Mr. Yordan] on a nonexclusive basis". (Docket No. 16, Exh. 1) Plaintiffs, however, claim that the Agreement is hardly clear and unambiguous by emphasizing Article 5.6. They further claim that the apparent contradiction between Article 5.6 and the non-exclusivity clause makes the Agreement ambiguous and precludes the dismissal of their Law 21 claim. The Agreement requires an interpretation of both the non-exclusivity clause and Article 5.6 together. (Docket No. 23) Plaintiffs claim that an expectation of exclusivity during tenure was created by Article 5.6 of the Agreement which was allegedly drafted by BPL itself. It is black letter law that an ambiguous, unclear contract is construed against its drafter. P.R. Laws Ann. tit. 31 § 3478; *Corp. del Fondo del Seguro del Estado v. Union de Medicos,*

2007 T.S.P.R. 35, 2007 WL 806054 *3; *Gonzalez v. Coop. Seguros de Vida de P.R.,* 117 D.P.R. 659 (1986).

Article 5.6 of the Agreement states as follows:

5.6. **Immediately upon the giving of notice of termination** by either Party, **BPL shall have the absolute right to appoint other representatives to solicit orders for the Products in the Territory,** without any obligation to Representative other than to pay the Commissions to the Representative in accordance with Section 4, above." (Emphasis added)(Docket No. 16, Exh. 1)

To put it differently, plaintiffs claim that, although paragraph 1 of the Agreement specifically provides that the relationship between the parties is "on a nonexclusive basis", BPL unequivocally and expressly agreed in article 5.6 that **absent a termination notice,** other representatives **would not** be appointed for the Territory. Defendants, on the other hand, claim that there is no inconsistency between articles 1 and 5.6. They allege that article 5.6 does not bar BPL's right to appoint other representatives or sell its products directly in the territory before termination, but instead, merely states that it may do so upon Yordan's termination. (Docket No. 16) The Court does not agree.

As plaintiffs correctly assert, however, if BPL already had the right to appoint other representatives for the Territory, the exercise of that right would not be conditioned upon the giving of a "notice of termination". Article 5.6 seems to preclude the appointment of any other sales representative in "the Territory" by BPL absent a termination notice, while paragraph 1 expressly states that Mr. Yordan was appointed on a nonexclusive basis.

Such an inconsistency is sufficient to deny BPL's Motion to Dismiss. *See Sucn. Ramirez v. Tribunal Superior*, 81 P.R. Dec. 357, 361 (1959) ("The only terms which can be considered to be "clear" are those which in themselves are sufficiently lucid to be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation, and without requiring for their understanding any reasoning or illustration susceptible to challenge.") *Sucn. Ramirez v. Tribunal Superior*, 81 P.R. Dec. 357, 361 (1959); *see also Catullo v. Metzner*, 834 F.2d 1075, 1079–80 (1st Cir.1987).

Whether the commercial relationship between the parties is nonexclusive is a question whose answer will only become clear as facts develop at a later stage of this litigation. For the time being, we hold that Plaintiffs have met basic pleading requirements for defendants' motion to dismiss to be **DENIED.**

### CONCLUSION

For the foregoing reasons, the Court **DENIES** BPL's motion to dismiss. Defendants' request to hold other claims in abeyance until the Court decides the transfer issue is **MOOT.** The parties are reminded that the scheduling of this case remains intact.

**IT IS SO ORDERED.**